UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY ANN BRYANT,<br><br>         Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of the<br>Social Security Administration,<br><br>         Defendant. | Case No. CV 15-2353-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.   INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income ("SSI"). She claims that the Administrative Law Judge ("ALJ") erred when he rejected the opinion of her treating psychiatrist and when he found that she could perform work requiring a reasoning level of two or more. For the following reasons, the Court concludes that the ALJ erred and remands the case to the Agency for further proceedings.

## II.   SUMMARY OF PROCEEDINGS

In September 2011, Plaintiff applied for SSI, alleging that she had been disabled since April 1996, due to degenerative disc disease,

carpal tunnel syndrome, high blood pressure, shoulder pain, heart problem, dizziness, anxiety, and depression. (Administrative Record ("AR") 82, 104, 231.) Her application was denied initially and on reconsideration and she requested and was granted a hearing before an ALJ. In September 2013, she appeared with counsel and testified at the hearing. (AR 34-66.) Thereafter, the ALJ issued a decision denying benefits. (AR 12-24.) Plaintiff appealed to the Appeals Council, which denied review. (AR 1-8.) She then filed the instant action.

### III. ANALYSIS

A. <u>The Treating Doctor's Opinion</u>

Plaintiff contends that the ALJ erred when he rejected treating psychiatrist Lanlan Wang's opinion that Plaintiff's affective disorder met Listing 12.04 and that she would experience significant difficulties in nearly every aspect of daily functioning. (AR 481-84.) The ALJ relied, instead, on the opinions of the examining psychiatrist and psychologist who concluded that she was not so impaired. (AR 18, 23.) For the following reasons, the Court finds that the ALJ did not err here.

It is the province of the ALJ to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Generally speaking, three types of doctors supply this evidence: treating doctors, examining doctors, and reviewing doctors. All things being equal, treating doctors' opinions are entitled to the greatest weight because they are hired to cure and have more opportunity to know and observe the patient. *Id.* at 1041; *see also* 20 C.F.R. 416.927(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the

medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations"). ALJs, however, are not required to merely accept the opinion of any doctor and, where the opinion is contradicted, may reject it for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Dr. Wang began treating Plaintiff in March 2012. (AT 478.) In February 2013, he completed a Mental Disorders Questionnaire form on which he reported that Plaintiff's history "suggests repeated episodes of decompensation with periods of symptom exacerbation." (AR 478.) He noted that she had shown little improvement with treatment and complained of suicidal thoughts and hallucinations. (AR 478, 479.) He concluded that she would not be able to complete a normal workday or workweek without interruptions; would have difficulty performing activities within a schedule, maintaining attendance, sustaining a routine, staying focused, remembering and carrying out instructions, coping with changes in environment, and interacting and communicating effectively with others. (AR 482-83.)

Dr. Wang's assessment that Plaintiff met Listing 12.04 and was otherwise unable to perform any type of full-time work conflicted with the opinions of the examining psychiatrist and psychologist, both of whom thought that she could, at a minimum, follow simple instructions and interact with others. (AR 371, 495.) The ALJ gave three reasons for rejecting Dr. Wang's opinion and relying on the examining doctors' opinions instead: (1) Dr. Wang's finding that Plaintiff experienced

3

repeated episodes of decompensation was not supported by the medical evidence; (2) Dr. Wang relied on Plaintiff's subjective complaints, which the ALJ rejected; and (3) Dr. Wang's opinion that Plaintiff was severely limited in her ability to function was not consistent with the routine treatment that he provided her or with her apparent improvement with treatment.  (AR 18.)

The ALJ's first justification is supported by substantial evidence in the record.  Plaintiff told Dr. Wang that she had suffered from depressive and manic episodes since childhood, which were made worse by the sudden death of her teenage son and subsequent loss of her job and home.  (AR 478.)  Based on her account, Dr. Wang found that she must have suffered from repeated episodes of decompensation and a concomitant loss of functioning in daily activities, social functioning, concentration, and task completion.  (AR 478.)  There is no medical evidence in the record to support Dr. Wang's finding, however.

Pursuant to the Listings, episodes of decompensation:
> may be inferred from medical records showing significant
> alteration in medication; or documentation of the need for a more
> structured psychological support system (e.g., hospitalizations,
> placement in a halfway house, or a highly structured and
> directing household); or other relevant information in the record
> about the existence, severity, and duration of the episode.

Listing 12.04, Paragraph C.

There is no evidence of significant changes in Plaintiff's medication regimen or a need for a more structured support system.  On the contrary, Plaintiff's March 2012 initial mental health assessment noted that she had never been hospitalized for mental health

treatment.  (AR 385.)  Plaintiff told the examining psychologist the same thing.  (AR 491.)  Further, she told the examining psychiatrist that she only received "outpatient treatment or counseling" in 2005, though she had been "on and off" psychiatric medications for years.[1]  (AR 368, 369.)  Because there was no evidence to support Dr. Wang's finding that Plaintiff had suffered from a severe psychiatric condition since childhood, this was a legitimate reason for questioning his opinion.

The ALJ also questioned Dr. Wang's opinion because he relied "heavily" on Plaintiff's subjective complaints that the ALJ found less than credible, a finding Plaintiff has not challenged.  (AR 18, 20-22.)  This, too, is a legitimate reason for discounting a doctor's opinion, *see Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (affirming ALJ's discounting of treating doctor's opinion that was based on claimant's subjective characterization of her symptoms which the ALJ found was not credible), and it is supported by substantial evidence.  Although Dr. Wang's opinion was presumably also based on the mental status examination of Plaintiff that he conducted at the time that he completed the questionnaire, the findings from that exam were generally unremarkable.  For example, Dr. Wang noted that her eye contact was normal, her interview behavior was cooperative, and her insight and judgment fair.  (AR 480.)  Although he also found her mood and affect to be dysphoric (AR 480-81), his conclusions regarding her ability to function appear to be based

---

[1] Plaintiff told the ALJ that she had been taking medications for her mental state "off and on for maybe 17, 18 years," but acknowledged that when she was taking her medications, she was "okay." (AR 39.)

largely on her reportedly limited daily activities and her claim that she experienced hallucinations. (AR 480-83.) By contrast, the ALJ found that Plaintiff was able to follow the questioning at the administrative hearing and was doing much better on medications, noting that she was able to go to the movies with her daughter, travel on a bus to visit her son in Fresno, and drive to Arizona, which suggested that she was far more functional than she claimed. (AR 18-19, 38, 50-51, 53.) Notably, Plaintiff has not challenged the ALJ's findings that she was capable of extensive daily activities and that she was less than credible. As such, the Court concludes that the ALJ was entitled to rely on the fact that Dr. Wang's opinion was based in part on Plaintiff's statements about her condition, which the ALJ discounted.

Finally, the ALJ questioned Dr. Wang's opinion because the record disclosed that he provided her only routine treatment, which caused her symptoms to improve. (AR 18.) Generally speaking, this, too, is a legitimate reason for rejecting a treating doctor's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (holding ALJ entitled to reject treating doctor's opinion based, in part, on conservative course of treatment). The record is mixed, however, on this issue.

Between March 2012 and June 2013, Dr. Wang saw Plaintiff almost every month. (AR 412-33, 453-89, 511-23.) During that period, he prescribed varying amounts of various psychiatric medications, including Effexor, Seroquel, Zoloft, and Lithium, in an attempt to control her psychotic symptoms and to eliminate side effects from the medications. (AR 426 (replacing Seroquel with Abilify), 423 (ceasing treatment with Lithium), 520 (increasing Seroquel dosage), 522

(lowering Seroquel dosage.)  Although Plaintiff reported at times that she was doing better, (AR 424 (July 27, 2012), 466 (December 5, 2012), 521 (April 30, 2013)), at other times, she complained of crying, sadness, anxiety, and hallucinations.  (AR 422 (September 26, 2012), 423 (August 29, 2012), 519 (June 28, 2013), 520 (May 30, 2013), 522 (March 12, 2013).)  Thus, the record only partially supports the ALJ's finding that Plaintiff's condition improved during this period. *See*, *e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (holding ALJ's rejection of physician's opinion was not supported by substantial evidence where ALJ selectively relied on records indicating improvement and ignored others that showed continued impairment).

As for Dr. Wang's treatment, the Court is inclined to agree that his approach, which consisted of medications and therapy, is on the conservative side.  On the other hand, the ALJ did not explain what more aggressive modes of treatment were available and/or that Plaintiff was offered such treatment and declined.

Even were the Court to reject this third reason for discounting Dr. Wang's opinion, however, the ALJ's other two reasons are sufficient to uphold his decision to reject Dr. Wang's opinion.  As such, it is affirmed. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding error is harmless if substantial evidence remains to support the ALJ's conclusion).

B.   The Residual Functional Capacity Determination

The ALJ determined that Plaintiff would be able to perform medium work so long as it consisted of one-to-two-step instructions with no public contact.  Relying on the opinion of a vocational expert, he found that she could work as a hand packager, linen room attendant,

and hospital cleaner. (AR 19, 24, 59.) Plaintiff contends that her limitation to one- and two-step instructions means that she cannot perform these jobs because, according to the Dictionary of Occupational Titles ("DOT"), they require a Reasoning Level Two (hand packager, hospital cleaner) and Three (linen room attendant). (Joint Stip. at 5-9; DOT. No. 920.587-018 (hand packager), No. 323.687-010 (hospital cleaner), No. 222.387-030 (linen room attendant).) The Agency argues that the ALJ properly relied on the vocational expert's testimony. (Joint Stip. at 10-13.) For the following reason, the Court sides with Plaintiff.

Since the ALJ issued his decision, the Ninth Circuit Court of Appeals has held that a limitation to one- and two-part instructions is commensurate with Reasoning Level 1, not Reasoning Level 2. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002-03 (9th Cir. 2015) (holding conflict exists between limitation to one- and two-step tasks and demands of Level Two reasoning). Even though the vocational expert testified that her opinion was consistent with the DOT (AR 59), as per *Rounds*, there is an apparent conflict between the DOT and the vocational expert's testimony which the ALJ must address on remand. *Id.* at 1004. If the ALJ determines that Plaintiff cannot perform these jobs, he will then have to determine if there are any other jobs in the economy that she can perform despite her limitation to jobs involving one- and two-part instructions.[2]

---

[2] The vocational expert testified in response to another question from the ALJ that an individual who could perform simple, repetitive tasks (rather than one- or two-step tasks) could perform the three jobs she identified. (AR 59-60.) The ability to perform simple, repetitive tasks is consistent with Reasoning Level Two. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Meissl v. Barnhart*, 403 F. Supp.2d 981, 984 (C.D. Cal. 2005). Because the ALJ

8

IV. CONCLUSION

The ALJ's decision is reversed and the case is remanded for further consideration consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.

DATE: July 5, 2016

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\BRYANT, C 2353\Memo opinion.wpd

---

expressly declined to adopt that limitation or the examining psychologist's opinion on which it was based (AR 23, 495), however, the vocational expert's testimony in that regard does not render the ALJ's error harmless.

9